UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK BRIVIK,

        Plaintiff,

v.    Case No. 8:11-cv-2101-T-33TGW

JOSEPH MURRAY, STEVE MURRAY,
JOSEPH RUSSON, RICHARD
ZIMMERMAN, RONALD CARR, ANDRE
PANET-RAYMOND, and ABRAHAM
SMAJOVITS,

        Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Richard Zimmerman's Amended Renewed Motion for Award of Attorney's Fees and Costs (Doc. # 168), filed on January 17, 2014; Defendant Steve Murray's Renewed Motion for Award of Attorney's Fees and Costs (Doc. # 169), filed on January 23, 2014, and Defendant Ronald Carr's Renewed Motion for Award of Attorney's Fees and Costs (Doc. # 172), filed on January 31, 2014. Plaintiff Mark Brivik filed a Response in Opposition to the Motions (Doc. # 173) on February 14, 2014. As explained herein, the Court denies the Motions to the extent that they request attorney's fees and requires further information as to costs.

I. **Background**

Plaintiff Mark Brivik filed a 28 U.S.C. § 1983 false arrest and malicious prosecution action against Officer Claudia Law, John Murray, Steve Murray, Joseph Russo, Richard Zimmerman, Ronald Carr, Andre Panet-Raymond and Abraham Smajovits on September 15, 2011. (Doc. # 1). In the Complaint, Brivik alleged that he entered into a multi-million dollar real estate transaction concerning an investment property located in Bradenton, Florida, with John Murray, Steve Murray, Joseph Russo, Richard Zimmerman, Ronald Carr, Andre Panet-Raymond and Abraham Smajovits (collectively referred to as the "Co-Investors"). (Doc. # 76 at ¶¶ 37, 47). However, "[y]ears after the parties' deal in the Real Estate Development closed, the Co-Investors concocted bogus criminal allegations against Mr. Brivik. . . . The Co-Investors' intention, inter alia, was to get out of a land deal that preceded a downturn in the real estate market." (Id. at ¶ 50).

Brivik alleged that the Co-Investors met with Florida Department of Law Enforcement Officer Claudia Law on at least ten occasions and "developed false facts" leading to his arrest. (Id. at ¶ 70). Essentially, Brivik alleged that the Co-Investors reported to Officer Law that Brivik

2

misrepresented that he held a certain option to purchase real property imperative to the real estate transaction when in fact he did not possess such option. (Id. at ¶ 53).

Brivik described the Co-Investors' allegations against him as "baseless," "false," "concocted," and "bogus." (Id. at ¶¶ 49, 50, and 53). Nevertheless, Officer Law arrested Brivik, and he spent 24 days in jail based on the following charges and claims:

   a. An Organized Scheme to Defraud under Section 817.034(4)(a)1, Florida Statutes;
   b. Fraudulent Securities Transactions Omission of Fact in violation of Section 517.301(1)(a)2, Florida Statutes;
   c. Sale of Unregistered Shares in violation of Section 517.07(1), Florida Statutes;
   d. Sale of Security by an Unregistered Issuer in violation of Section 517.12, Florida Statutes;
   e. Obtained $4,475,000.00 in funds from victims through misrepresentation and fraud;
   f. Misrepresented the existence of an Option in property in connection with a waterfront parcel, causing the Co-Investors to be induced to invest money in the Real Estate Development;
   g. Failed to advise the Co-Investors that he had an outstanding warrant against him;
   h. Had an outstanding warrant against him in South Africa;
   i. Received a fee of $300,000.00 at the close of the deal in connection with the Real Estate Development; and
   j. Misrepresented the value of the land in the Real Estate Development.

(Id. at ¶¶ 60, 77).

3

According to Brivik, all charges were dropped when "an Assistant State Attorney, after reviewing the allegations, determined that each allegation was absent a proper legal and factual basis." (Id. at ¶ 51). Brivik further alleged, "the prosecution terminated in a manner that was indicative of Mr. Brivik's innocence as to all the charges leveled against him." (Id. at ¶ 52).

After finding that Officer Law was protected by the federal doctrine of qualified immunity and the state doctrine of sovereign immunity, the Court dismissed Brivik's claims against Officer Law with prejudice on April 5, 2012. (Doc. # 70).

The Court permitted Brivik to file an amended complaint against the Co-Investors, which he filed on April 18, 2012. (Doc. ## 41, 76). In counts one and two of the amended complaint, brought pursuant to 42 U.S.C. § 1983, Brivik alleged that, in joint action with Officer Law, the Co-Investors conspired, acted in concert, and reached an understanding to violate Brivik's Fourth Amendment rights. (Doc. # 76 at ¶¶ 61-68). In counts three and four, for malicious prosecution and false arrest, Brivik alleged that the Co-Investors "conspired to falsify information as to Mr.

4

Brivik" leading to his arrest and incarceration. (Doc. # 76 at ¶ 101).

The Court dismissed John Murray and Abraham Smajovits without prejudice on October 1, 2012, after finding that Brivik failed to timely effect service of process upon these defendants. (Doc. # 137). Thereafter, on October 3, 2012, the Court dismissed Joseph Russo and Andre Panet-Raymond after finding that Brivik failed to prosecute his claims against these Defendants. (Doc. ## 138, 139).

On October 5, 2012, after considering dispositive motions filed by Steve Murray, Ronald Carr, and Richard Zimmerman, the Court dismissed the action with prejudice. (Doc. # 141). Among other findings, the Court determined:

> Even if Plaintiff had sufficiently alleged a conspiracy, this Court concludes that dismissal of this action is appropriate because there is no plausible basis for finding a symbiotic relationship between the Co-Investors and Officer Law. As argued by Defendant Carr, "the allegations in the instant action do not account for the fact that the alleged conspiracy was not going to amount to anything that would in any way benefit Officer Law. . . . It would be completely illogical for Officer Law to believe her career would be furthered by pursuing an arrest without probable cause" based on a concocted scheme. (Doc. # 105 at 12, 13).
>
> Because there is insufficient evidence to hold the Co-Investors liable as state actors under the joint action test, the Plaintiff has no viable claim against the private Defendants under § 1983.

5

> Dismissal with prejudice is appropriate. See Rayburn, 241 F.3d at 1347 (holding that because § 1983 "only provides for claims to redress state action," dismissal is appropriate once the court concludes that there is no state action).

(Doc. # 141 at 13).[1]

Judgment was entered in favor of Richard Zimmerman, Ronald Carr, and Steve Murray and against Brivik on October 9, 2012. (Doc. # 142). On October 19, 2012, Steve Murray filed a motion for attorney's fees and costs (Doc. # 143). Ronald Carr and Richard Zimmerman filed similar motions requesting the imposition of fees and costs on Brivik days later. (Doc. ## 145, 146). Brivik filed a notice of appeal (Doc. # 147) on November 2, 2012, and on December 12, 2012, the Court denied the fee motions without prejudice with leave to re-file after the resolution of the appeal. (Doc. # 153). The Eleventh Circuit affirmed the dismissal of the action and the Court's Judgment. (Doc. ## 161, 167).

At this juncture, Steve Murray, Ronald Carr, and Richard Zimmerman have renewed their motions for attorney's fees and costs. Richard Zimmerman seeks $30,088.25 in attorney's fees and $580.70 in costs. (Doc. # 168). Steve Murray seeks

---

[1] After determining that dismissal of the § 1983 claims was required, the Court declined to exercise its jurisdiction over Brivik's pendant state law claims for malicious prosecution and false arrest. (Doc. # 141 at 13-14).

6

$36,217.50 in attorney's fees and $3,191.62 in costs. (Doc. # 169). Ronald Carr seeks $34,590.05 in attorney's fees and $790.05 in costs. (Doc. # 172).

## II. Fee Shifting in Civil Rights Cases

Under 42 U.S.C. § 1988(b), a party prevailing under 42 U.S.C. § 1983 may be awarded "a reasonable attorney's fee as part of the costs." The Supreme Court, however, has held that in civil rights cases, the "plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978).

As stated in Sullivan v. School Board of Pinellas County, 773 F.2d 1182, 1189 (11th Cir. 1985), "In determining whether a suit is frivolous, a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." (internal citation omitted). The Sullivan court enunciated several factors that the Court may consider when making a frivolity determination, including "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-

7

blown trial on the merits," but emphasized that there are no "hard and fast rules" for determining frivolity. Id. And "[d]eterminations regarding frivolity are to be made on a case-by-case basis." Id.

Considering all of the factors enumerated above, the Court determines that an award of attorney's fees is not warranted here. The record reflects that this Court dismissed this action as to the Co-Investors after finding that Brivik failed to demonstrate that the Co-Investors were § 1983 state actors, and the Eleventh Circuit affirmed that determination. Neither this Court, nor the Eleventh Circuit characterized Brivik's action as frivolous, unreasonable, groundless, or without foundation. There is a difference between an unsuccessful action and a frivolous action. While Brivik did not prevail, this Court does not find that his action as to the Co-Investors crossed the line of frivolity.

In making this determination, the Court has considered Cordoba v. Dillard's, Inc., 419 F.3d 1169 (11th Cir. 2005), as well as other authorities. In Cordoba, the plaintiff employee filed an Americans with Disabilities Act case and the district court granted summary judgment in favor of the defendant employer after finding that the employer did not have knowledge of the plaintiff's disability, and therefore, could

8

not have discriminated against the plaintiff on the basis of such disability. Id. at 1175.

The district court's summary judgment order criticized plaintiff's legal theories and made a finding of frivolity: "Plaintiff's theory of constructive knowledge is like the rabbit hole of Alice in Wonderland, a portal into a realm in which down is up and up is down." Cordoba v. Dillard's, Inc., No. 6:01-cv-1132-Orl-19KRS, 2003 U.S. Dist. LEXIS 23506, at *19 (M.D. Fla. June 12, 2003). The district court also described the ADA claim as "patently frivolous as a matter of law and logic" and noted: "the Court can scarcely imagine a more compelling example of frivolity than a theory of recovery that does not meet even the most basic standard of logical cogency." Id. at *19-20. The defendant filed a petition for attorney's fees pursuant to the ADA's fee shifting provision as well as 28 U.S.C. § 1927, which the district court granted.[2] Cordoba, 419 F.3d at 1176.

The plaintiff appealed the summary judgment order and the attorney's fees award. The Eleventh Circuit affirmed the

---

[2] Section 1927 provides, "Any attorney or other person . . . who multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

9

grant of summary judgment in favor of the defendant, but reversed the district court's fee award, finding an abuse of discretion. As to the fee award, the Eleventh Circuit noted: "to be sure, Cordoba's claims were weak, and it is easy at this point to recognize that the court and all parties involved would have been better off had they never been pursued." Id. at 1181. However, the court indicated "it is important that courts not 'engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.'" Id. (citing Christiansburg, 434 U.S. at 422).[3]

Here, Brivik was arrested and spent nearly a month in jail. (Doc. # 161 at 2). The charges were later dismissed when the State Attorney's Office declined to prosecute. (Id.). Brivik's claims against the Co-Investors, who cooperated in

---

[3] The Court recognizes that attorney's fees were granted in Cordoba on the basis of the ADA's fee shifting provision and upon application of 28 U.S.C. § 1927. While those statutes are not being relied upon here, the Court finds the discussions in Cordoba to be relevant due to that court's reliance upon and interpretation of Christiansburg and its impact on fee shifting in civil rights cases.

10

the investigation against him and allegedly provided false information to law enforcement, were not successful, but the Court declines to find those claims so utterly frivolous as to warrant the imposition of attorney's fees.[4]

The Christiansburg case cautions that fees should not be granted to prevailing defendants in civil rights cases "routinely." 434 U.S. at 421. The Court agrees with Brivik that an Order granting fees under the circumstances presented here could "stifle" and "chill" § 1983 civil rights litigation. (Doc. # 173 at 9). Therefore, the Court declines to award attorney's fees as to Steve Murray, Ronald Carr, and Richard Zimmerman.

**III. Costs**

Brivik has not lodged any specific objections to the costs sought, but correctly notes that none of the cost-seeking Defendants have filed a Bill of Costs. Rather than engaging in the exercise of theorizing how the cost-seeking

---

[4] It is notable that one of the Co-Investors, Steve Murray, previously filed a Motion for Rule 11 Sanctions against Brivik, which this Court denied. (Doc. ## 38, 55). Specifically, the Court noted: "While the Court found that the Complaint allegations concerning Steve Murray were lacking, the Court did not find the Complaint to be filed for an improper purpose, such as to needlessly increase the cost of litigation, or so utterly frivolous or baseless as to warrant the imposition of Rule 11 sanctions against Plaintiff." (Doc. # 55).

11

Defendants would catagorize the costs incurred and then hypothesizing about what costs Brivik might challenge, the Court directs Brivik and the cost-seeking Defendants to confer regarding the costs in an attempt to resolve the issue without Court intervention. If those negotiations prove unsuccessful, each of the cost-seeking Defendants may file a Bill of Costs, accompanied by a legal memorandum, by March 14, 2014, to which Brivik may respond by March 28, 2014.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Richard Zimmerman's Amended Renewed Motion for Award of Attorney's Fees and Costs (Doc. # 168), Defendant Steve Murrary's Renewed Motion for Award of Attorney's Fees and Costs (Doc. # 169), and Defendant Ronald Carr's Renewed Motion for Award of Attorney's Fees and Costs (Doc. # 172) are **DENIED** as to Attorney's Fees.

(2) The Court directs Brivik and the cost-seeking Defendants to confer regarding the costs in an attempt to resolve the issue without Court intervention. If those negotiations prove unsuccessful, each of the cost-seeking Defendants may file a Bill of Costs, accompanied by a legal memorandum, by **March 14, 2014**, to which Brivik may respond by **March 28, 2014.**

12

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this <u>3rd</u> day of March, 2014.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel and Parties of Record